UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER MEDINA, | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:25-CV-561 |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On November 18, 2025, Plaintiff Jennifer Medina ("Claimant") brought this action under 42 U.S.C. §§ 405(g) for review of the final decision of the Commissioner of Social Security. [Doc. 1]. Upon consent of the parties pursuant to 28 U.S.C. § 636(c), this Court has jurisdiction over this matter through entry of final judgment. [Docs. 10, 11].

## I. APPLICABLE LAW – STANDARD OF REVIEW

A review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed to the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989); *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019). "Substantial evidence" is evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). It must be enough to justify, if the trial

were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact. *Sito v. Comm'r of Soc. Sec.*, 229 F. Supp. 3d 633, 638 (N.D. Ohio 2017) (citing *LeMaster v. Sec'y of Health & Human Servs.,* 802 F.2d 839, 841 (6th Cir. 1986)). A court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Even if a court were inclined to resolve factual issues differently, the decision must stand if substantial evidence supports it. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). At the same time, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Act to be eligible for benefits. "Disability" includes physical and mental impairments that are "medically determinable" and so severe as to prevent the claimant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a). A five-step sequential evaluation applies in disability determinations. 20 C.F.R. § 404.1520. Review ends with a dispositive finding at any step. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A claimant bears the burden of establishing benefits entitlement by proving the existence of a disability. *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *Rineholt v. Astrue*, 617 F. Supp. 3d 733, 742 (E.D. Tenn. 2009). If a claimant meets that burden in steps one through four, at step five, the burden shifts to the Commissioner to establish a claimant's ability to work. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). In conducting its review of the ALJ's decision, the Court may consider any evidence contained in the record

regardless of whether it was cited by the ALJ. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d. 528, 535 (6th Cir. 2001).

## II. PROCEDURAL AND FACTUAL OVERVIEW

Claimant filed her Brief in Support [Doc. 14] on June 4, 2026, in which she asserts that the Administrative Law Judge ("ALJ") erred by (1) characterizing Claimant as "independent" despite the record containing substantial evidence that her daily activities require extra time, modification, spousal assistance, and her reduced upper-extremity strength and gait, [Doc. 14, p. 5], and (2) finding Claimant's migraines are non-severe, coupled by the failure to incorporate any corresponding limitation into Claimant's residual functional capacity ("RFC"). *Id.* at 11. As to the ALJ's "independent" finding, Claimant asserts that an ALJ must consider all the relevant evidence, must not cherry pick evidence, must confront contrary objective medical evidence, and must create a logical bridge between the evidence and the result reached. *Id.* at 6–7. Claimant also asserts that the ALJ found that she was "'described as being independent with activities of daily living, functional mobility, and homemaking in May 2024, and used that characterization as a cornerstone for denying disability." *Id.* at 8. Claimant argues that this characterization materially misrepresents the evidence in the record, which shows that Claimant required extra time and modification to perform functional mobility independently. *Id.* Claimant also argues that the record shows that Claimant required assistance from her spouse, that she was constantly fatigued and suffered from daily headaches and migraines three to four times per month, had a modified gait, and had reduced upper-extremity strength of only 3/5. *Id.* Further, Claimant contends that by omitting these qualifiers, the ALJ failed to define what "independent" means in context of all record evidence, which is important because the record shows that Claimant would require accommodations that no employer is obligated to furnish. *Id.* Finally, Claimant argues that the ALJ's decision fails to build

a logical bridge because she failed to articulate how Claimant walking 200 feet in a controlled, hospital environment provided proof that Claimant could sustain ambulation for an eight-hour workday. *Id.* at 9.

As to the ALJ's findings on Claimant's migraines, Claimant asserts that her RFC must be based on all the relevant evidence in the record, including as to those conditions that the ALJ found to be non-severe. *Id.* at 11. Claimant argues that the ALJ's formulation of her RFC was silent on Claimant's migraines despite the ALJ acknowledging the condition. *Id.* at 12. Claimant argues that while the ALJ stated that she considered all of Claimant's impairments in formulating the RFC, this mere summary statement does not substitute for the ALJ articulating how she accounted for the migraines in this RFC or, alternatively, why she found that she did not need to do so. *Id.* Claimant also argues that her migraine impairment is well documented and persistent, supported by her function report, objective medical evidence, and treatment records. *Id.* at 12–13. Claimant argues that the ALJ's conclusion that the migraines had resolved is contradicted by this evidence in the record. *Id.* at 13. Further, she contends that the ALJ made no findings regarding this contradictory testimony and evidence but selectively parsed the evidence in violation of *Gentry*. *Id.*

On June 26, 2026, the Commissioner filed a Response [Doc. 16], arguing that substantial evidence supported the ALJ's opinion and that the ALJ met her obligation under applicable law. As to the ALJ's "independent" finding, the Commissioner contends that the ALJ considered "essentially the same evidence [Claimant] says the ALJ ignored" and additionally cited key factors that supported the limited RFC formulated by the ALJ. *Id.* at 2. For example, the Commissioner noted that the ALJ directly quoted the portion of Claimant's medical record stating that Claimant required extra time and modification to move independently, needed intermittent assistance from her spouse, and had some difficulty with tolerance and fatigue. *Id.* at 3 (citing Tr. 29). The

Commissioner also argues that the ALJ supported her RFC with citation to 2022 and 2023 medical records and prior administrative medical findings regarding Claimant's physical limitations, including those issued by agency medical consultants Steven Arkin, M.D., and Phillip Matar, M.D. *Id.* at 4–6. The Commissioner asserts that these facts refute Claimant's argument that the ALJ cherry-picked the evidence.

As to the ALJ's RFC formulation concerning Claimant's migraines, the Commissioner asserts that because the ALJ found that Claimant had at least one severe impairment, the question is simply whether the ALJ's RFC is overall supported by substantial evidence. *Id.* at 7–8. The Commissioner also asserts that once the ALJ finds a primary headache disorder is a medically determinable impairment, the ALJ must evaluate the resulting headache-related limitations by assessing if Claimant's symptoms are consistent with the evidence in the record. *Id.* at 8. In assessing Claimant's RFC, the ALJ recounted Claimant's testimony regarding her symptoms, including daily headaches that required her to lie down in a dark room for several hours and Claimant taking Tylenol, which was partially effective. *Id.* The Commissioner argues that, although the ALJ did not explicitly mention headache-related limitations in the remainder of her decision, there was little evidence in Claimant's medical records to support the limitations Claimant alleged. *Id.* at 8–9. For example, agency medical consultant, Dr. Matar, considered Claimant's headaches and noted that he considered them in opining that she should have limits on the noise level in her working environment, which the ALJ then included in her RFC findings. *Id.* at 9. The Commissioner contends that by the ALJ adopting this limitation and briefly discussing Claimant's headache symptoms, she adequately articulated as to how she considered Claimant's reports of headaches. *Id.* at 11.

On July 10, 2026, Claimant filed a Reply [Doc. 17], reasserting and building on her arguments in her brief. Claimant argues that the RFC rested on a mischaracterization of the very evidence the ALJ credited, namely converting Claimant's ability to perform daily activities "independently with extra time and modification" unto simply "independent." *Id.* at 1. Claimant also argues that the ALJ reciting these qualifiers in her summary "misses the point: the error is the conclusion the ALJ drew from the incomplete characterization, not the completeness of the summary that preceded it." *Id.* Claimant asserts that "the ALJ addressed [Claimant's] migraines only to dismiss them" without explanation as to why Claimant's symptoms did not require an RFC limitation. *Id.* at 1–2. Further, Claimant argues the Commissioner defended the ALJ's decision on grounds the ALJ never gave, namely that the "moderate noise" limitation was a deliberate migraine accommodation when the ALJ never made the connection. *Id.* at 2. The Claimant further argues that every record the Commissioner relies on "predates [Claimant's] May 20, 2024 transsphenoidal pituitary resection," where the post-surgical findings show extra-time dependence, 3/5 strength, and markedly slowed gait. *Id.* at 4. Claimant asserts this medical evidence stands uncontradicted, so there is no "zone of choice." *Id.* Claimant argues that while the Commissioner relies on the prior administrative medical findings of Drs. Arkin and Matar, neither ever completed a mental residual functional capacity assessment at all. *Id.* Further, Claimant argues that there was contradicting evidence to support Claimant's headaches, including brain imaging and neurosurgical notes. *Id.* at 8. Finally, Claimant argues that the ALJ failed to form a logical bridge between the evidence supposedly relied on and the conclusion reached. *Id.* at 10.

On October 29, 2026, the Court held a remote hearing to address the briefs filed in this case. After a thorough review of the record in this matter and after considering the arguments presented by the parties in their briefing and the information provided by counsel during the hearing, the Court

issued an oral ruling on the record. Present during the hearing were Bryan Konoski, Esq. for Claimant and Lisa A. Thomas, Esq. for the Commissioner. The Court's full oral ruling is incorporated herein by reference, and this written opinion and order are provided in order to briefly summarize certain core portions of the Court's ruling.[1]

## III. ANALYSIS

As noted above, the issues for review here are whether the ALJ erred by (1) characterizing Claimant as "independent" despite the record containing substantial evidence that her daily activities require extra time, modification, and spousal assistance, and in light of her reduced upper-extremity strength and gait, and (2) by finding Claimant's migraines to be non-severe and failing to include any corresponding limitations to account for them into Claimant's RFC. The Court first notes that Claimant has an extensive and well-documented history of medical problems including Cushing's Disease which has required two surgeries, thyroid cancer and hypothyroidism following thyroid removal, connective tissue disorder (which the ALJ described as Lupus), fibromyalgia, and certain mental health issues. It was the ALJ's treatment of Claimant's physical health issues that the Court found did not comply with applicable regulations because there was insufficient information to allow the Court to determine the basis for the ALJ's decision, and to prevent Claimant from being bewildered as to the reason for the ALJ's decision. *See Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *9 (E.D. Tenn. May 2, 2023) (holding that ALJs must "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions . . . ."); *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp.3d 900, 908 (E.D. Mich. Aug. 13, 2021) (emphasizing the importance of the Commissioner complying with agency procedures to protect claimants from "bewilder[ment] when told by an administrative bureaucracy

---

[1] In making its oral ruling, the Court cited to the portions of the record which support the Court's findings and will not repeat those citations in its written opinion and order.

that [they are] not. . .” disabled when they have previously been told that they are disabled) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In reaching this conclusion, the Court observed that the ALJ discounted Claimant's severe fatigue out-of-hand and without explanation, despite her conditions of hypothyroidism, fibromyalgia, and connective tissue disorder all being known for potentially causing significant fatigue. Moreover, while state agency reviewed Phillip Matar, M.D., who the ALJ relied on heavily, stated in his opinion that there was no objective evidence to support Claimant's complaints, the records generate by Dr. Yono, Claimant's treating neurologist, reflect otherwise, noting how Claimant's symptoms align with her diagnosis of connective tissue disorder, and Claimant has taken Plaquenil for years to address this condition. Further, as to Claimant's fibromyalgia, that condition is not diagnosed by objective evidence but rather through a process of elimination. Of additional note, the ALJ also relied on the opinions offered by state agency reviewer Steve Arkin, M.D., but Dr. Arkin did not have the benefit of Dr. Yono's records in providing his opinion.

The Court also observes that the ALJ discounted Claimant's complaints of physical pain, including when Claimant walked, despite Claimant being diagnosed with meralgia paresthetica which causes tingling, numbness, and burning in the outer thigh and is known to cause pain when walking. Further, the ALJ appears not to have given any consideration to the third-party statement provided by Claimant's husband about Claimant's physical and emotional challenges because he had no medical background. The mere fact that a lay person providing a third-party statement does not have a medical background does not permit the ALJ to simply ignore the information rather than specifically addressing its persuasiveness. To hold otherwise would be to render third-party statements, which the agency offers a form on which to provide, a virtual nullity.

While the ALJ's handling of the above is of concern, the ALJ's fatal failure to articulate

was regarding Claimant's activities of daily living ("ADLs"). In determining that Claimant was not disabled from all work, the ALJ relied very heavily on Claimant's ability to perform her ADLs; however, the ALJ failed to address the many mentions in the record, both medical and non-medical, that Claimant had to have extra time and modification in order to perform them. In fact, the occupational assessment performed in May 2024 included these limitations and the ALJ included them in the portion of the assessment she quoted in her decision. Both Claimant and her husband addressed the issue as well. Still, the ALJ simply stated that Claimant could perform her ADLs without stating why she did not find Claimant needed extra time or modification to do them. This is particularly problematic given that Claimant repeatedly reported severe fatigue to her medical providers and more broadly.

The ALJ's failure to articulate as to Claimant's reports that she needs additional time to perform activities and must modify how she does them because all three of the sedentary positions that the vocational expert ("VE") opined that Claimant could perform were positions that required her to be able to maintain pace, and two of the three light positions that the VE opined that Claimant could perform are likewise "pace" positions. Even when reviewing the ALJ's decision as a whole, the Court is unable to determine the reasons why the ALJ found that Claimant would be in a position to perform work requiring her to maintain pace, and as noted above, the ALJ must articulate sufficiently to allow the Court to review his or her reasoning. *See Kirkland*, 2023 WL 3205330, at *9 ("In other words, the ALJ must 'build an accurate and logical bridge between the evidence and the ALJ's conclusions."') (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021)). Given the ALJ's failure to articulate as to why she discounted Claimant's reported inability to perform her ADLs as they are typically performed and her inability to do so at pace, the Court finds that the ALJ failed to meet the

regulation's requirements, meaning that the Court, in turn, must find that substantial evidence does not support the decision and remand is required. *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997) (finding that the substantial evidence is requirement is not met where the administrative law judge fails to adequately explain the reasons for his findings).

As an additional assignment of error, Claimant raised the ALJ's failure to find her migraines to be a severe impairment and her failure to then incorporate limitations into her RFC formulation for Claimant. Because the ALJ found that Claimant had at least one severe impairment, her failure to designate Claimant's migraines as severe, standing alone, is not reversible error. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) ("'[T]he fact that some of a claimant's impairments were not deemed to be severe at step two is . . . legally irrelevant' where other impairments are found to be severe.") (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). At the same time, the Court does note that the ALJ states in her decision that Claimant's migraines have either resolved or do not have more than a minimal impact on her ability to do work. It is crystal clear from the record that Claimant's migraines have not resolved. With that said, the Court observes that Claimant does not appear to take prescription medication for her migraine headaches and does not appear to be receiving care targeted at addressing them, which may be the reason that the ALJ found that they would have minimal effect on Claimant's ability to perform work. Still, on remand, the ALJ should articulate the reasons for her findings as to Claimant's migraine headaches and what impact they do or do not have on Claimant's ability to perform work.

## IV. CONCLUSION

For the reasons detailed above, the Court has determined that substantial evidence did not support the ALJ's decision. More specifically, the ALJ failed to analyze how the extra time and

modification requirements for Claimant to function independently would affect her RFC and her ability to perform the jobs that the vocational expert opined that she could perform. Accordingly, Claimant's request for **REMAND** [Docs. 1, 14] is **GRANTED** and this matter is remanded to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g). *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993): *Melkonyan v. Sullivan*, 501 U.S. 89, 97-98 (1991). The Court takes this action pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Upon remand, the Commissioner **SHALL** further develop the record as necessary to fully evaluate Claimant's physical functioning to determine whether Plaintiff is disabled within the meaning of the Social Security Act and is to specifically articulate how she has considered Claimant's complaints of fatigue, a symptom associated with multiple conditions with which Claimant is diagnosed, and Claimant's expressed need for additional time and modification in performing her ADLs in formulating Claimant's RFC. Moreover, the ALJ should likewise articulate further as to why she does or does not find it necessary to include any limitations in Claimant's RFC due to Claimant's reported migraine headaches.

SO ORDERED:

/s/Cynthia Richardson Wyrick
United States Magistrate Judge